IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JAMEL CHAWLONE BROWN,

     Movant,

v.                          **Civil Action No. 3:11-cv-00099**
                             **(Criminal No. 3:08-cr-00259)**

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 101). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.    Background

On November 5, 2008, a confidential informant, under the direction of members of the Huntington Violent Crime and Drug Task Force ("the Task Force"), arranged by

telephone to purchase a quantity of Oxycontin from Jamel Brown ("Brown").[1] (ECF No. 94 at 11-15). Members of the Task Force waited in the confidential informant's apartment in the West 100 block of Sixth Avenue, Huntington, West Virginia for the arrival of Brown. (*Id.*). Approximately 10-15 minutes after the phone call, Brown arrived at the confidential informant's apartment, greeted the confidential informant, and was immediately detained by members of the Task Force. (*Id.*). Following his detention, Brown was searched by members of the Task Force, who discovered a quantity of 80 mg Oxycontin pills on his person. (*Id.* at 15). Subsequently, the rental vehicle driven by Brown was searched, and a loaded .22 caliber pistol with an obliterated serial number was located under a seat. (ECF No. 19 at 6-7).

On November 12, 2008, a federal warrant for Brown's arrest was issued based on his alleged violation of 21 U.S.C. § 841(a)(1). (ECF No. 2). Subsequently, on December 3, 2008, a federal grand jury in Charleston returned a four count indictment against Brown, charging him with possession with intent to distribute a quantity of oxycodone and three charges related to possession of a firearm. (ECF No. 14). Count One of the indictment charged Brown with possession with intent to distribute a quantity of oxycodone in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 1). Count Two charged Brown with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). (*Id.* at 2). Count Three charged Brown with knowingly possessing a firearm with the manufacturer's serial number obliterated. (*Id.* at 3). Count Four charged Brown with knowingly possessing a firearm during the commission of a drug trafficking crime. (*Id.* at 4). On June 22, 2009, the Government filed an Information seeking imposition of

---

[1] The factual background is taken from Brown's underlying criminal case, *United States of America v. Brown*, Case No. 3:08-cr-00259.

enhanced penalties pursuant to 21 U.S.C. § 851. (ECF No. 38).

On June 24, 2009, Brown executed a written agreement with the Government in which he agreed to enter a guilty plea to the possession with intent to distribute charge in exchange for dismissal of the other three counts against him. (ECF No. 57). Brown's plea agreement contained the following express waivers of his right to appeal and collaterally attack his guilty plea, conviction, and sentence:

> The parties retain the right to seek appellate review of the District Court's determination of the Sentencing Guideline range, if an objection is properly preserved. Nonetheless, Mr. Brown knowingly and voluntarily waives his right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court on other grounds, so long as that sentence is below or within the Sentencing Guideline range determined by the District Court prior to any departure or variance. Similarly, the United States waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court on any other ground, so long as that sentence is within or above the Sentencing Guideline range determined by the District Court prior to any departure or variance.
>
> Mr. Brown also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.
>
> The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(*Id.* at 5). At its conclusion, the plea agreement also contained the following acknowledgment:

> I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this seven-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened or forced me in any way to enter into this agreement. Finally, I

- 3 -

am satisfied with the representation of my attorney in this matter.

(*Id.* at 7). Brown initialed each page of the agreement, signed, and dated it. Brown subsequently signed a separate written plea of guilty, which stated, "In the presence of Kerry Nessel, my counsel, who has fully explained the charges contained in the indictment against me, and having received a copy of the indictment before being called upon to plead, I hereby plead guilty to the charge contained in count one of the indictment." (ECF No. 56).

Brown's plea hearing was held before presiding District Judge on June 29, 2009. At the hearing, the Court engaged Brown in a thorough Rule 11 colloquy. (ECF No. 94). First, the Court established that Brown was competent to enter a guilty plea and then questioned Brown regarding the adequacy of his legal representation:

| | |
|---|---|
| The Court: | Mr. Brown, have you had enough time to discuss this case with your lawyer? |
| Brown: | Yes, sir. |
| The Court: | Has he been able to answer your questions about what you should do? |
| Brown: | Yes, sir. |
| The Court: | Are you completely satisfied with the legal advice he's given you? |
| Brown: | Yes, sir. |

(*Id.* at 4–5). Subsequently, Brown's attorney explained the contents of the plea agreement on the record. (*Id.* at 5–8). The Court then questioned Brown regarding his understanding of the plea agreement:

| | |
|---|---|
| The Court: | Mr. Brown, do you understand what this agreement does and what it requires of you? |
| Brown: | Yes, sir. |

| The Court: | Do you understand a part of this agreement is the stipulation of facts that can be used against you today for this plea or for sentencing or for trial if that becomes necessary? |
|---|---|
| Brown: | Yes, sir. |
| The Court: | Did you go over each of these paragraphs in the plea with your lawyer before you signed it? |
| Brown: | Yes, sir, I did. |
| The Court: | Do you want me to accept the plea agreement? |
| Brown: | Yes, sir. |

(*Id.* at 9).

Next, the Court read the contents of the indictment to Brown, explaining the terms contained therein. The Court reviewed the factual basis for Brown's guilty plea, asking him to state in his own words what he had done that made him guilty of the possession with intent to distribute charge. (*Id.* at 10–13). Brown testified that he had gone to the confidential informant's apartment on November 5, 2008 with the intention of selling the informant a quantity of oxycodone. (*Id.* 11–12). Brown indicated that the police searched his person and discovered 80 (80 mg) oxycodone pills and $2,000 in cash. (ECF No. 94 at 12). According to Brown, he had previously sold oxycodone to the confidential informant and, in total, had sold him approximately 125 (80 mg) oxycodone pills. (*Id.* at 12–13).

The Government then presented the testimony of Sergeant Darrell Booth of the Huntington Police Department who was assigned to the Task Force that investigated and arrested Brown. (*Id.* at 13-15). Sergeant Booth testified that he supervised the phone call made by the confidential informant to Brown ordering a number of oxycodone pills. (*Id.* at 14). The confidential informant reported that he had previously purchased a total

of approximately 125 (80 mg) oxycodone pills from Brown. (*Id.*). According to Sergeant Booth, Brown arrived shortly after the phone call, greeted the confidential informant, and was immediately detained by members of the Task Force. (ECF No. 94 at 14–15). Members of the Task Force subsequently searched Brown, finding 80 (80 mg) oxycodone pills in the left front pocket of his pants. (*Id.* at 15). At the conclusion of the testimony, the Court asked Brown if Sergeant Booth's statements were substantially correct. Brown agreed that the testimony was accurate. (*Id.* at 15–16).

The Court proceeded to explain the consequences of Brown's guilty plea. (*Id.* at 16–24). The Court discussed Brown's potential loss of civil rights, sentencing exposure, terms of supervised release, potential monetary penalties, and loss of federal benefits. (*Id.* at 16–19). The Court explicitly advised Brown that he was subject to a sentence of twenty years imprisonment and potentially could receive an enhanced sentence of up to thirty years imprisonment due to a prior conviction. Next, the Court explained at length the sentencing guidelines, their applicability to Brown's case, the unavailability of parole, and the binding nature of the guilty plea. (*Id.* at 19–20). Continuing with the plea colloquy, the Court reviewed the terms of Brown's plea agreement concerning Brown's waiver of appellate and collateral attack rights:

> The Court: Do you understand you may have the right to appeal your conviction if you believe your guilty plea today was unlawful or involuntary or if there's some other fundamental defect in these proceedings that you haven't waived by pleading guilty?
>
> Brown: Yes, sir.
>
> The Court: Do you understand that both you and the Government may have the right to appeal the sentence I impose except to the extent that you have waived or limited those rights in the plea agreement?

Brown:      Yes, sir.

The Court:     In your plea agreement you agreed to give up your right to challenge your guilty plea or the conviction resulting from this plea agreement or the sentence imposed for this conviction in any collateral attack -- and that includes a motion brought under Section 2255, which is also called a writ of habeas corpus -- except for a claim based on ineffective assistance of counsel.

                       Now, these waivers are generally enforceable, but if you believe the waiver is unenforceable, you'll have to present that challenge in the Court of Appeals. Do you understand that?

Brown:      Yes, sir.

The Court:     Also in the plea agreement you agreed that while either you or the Government may appeal my determination of the guideline range if there's a proper objection, that you're knowingly and voluntarily waiving any right to seek appeal of the sentence of imprisonment or the fine on any other ground as long as the sentence is below or within the guideline range determined by the Court before any departure or variance.

Brown:      Yes, sir.

(ECF No. 94 at 20–22).

     The Court also discussed at length the constitutional and other legal rights Brown would give up if he chose to plead guilty. (*Id.* at 22–24). Finally, the Court questioned Brown regarding the voluntary nature of his guilty plea:

The Court:     Has anyone forced you, threatened you, or intimidated you, or talked you into pleading guilty against your will?

Brown:      No, sir.

The Court:     Are you acting voluntarily and of your own free will in entering this guilty plea?

Brown:      Yes, sir, I am.

The Court:     Is pleading guilty your own idea?

- 7 -

Brown:        Yes, sir.

The Court:    Has anyone promised you something or told you anything
              different from what we've discussed here in court today to
              get you to plead guilty?

Brown:        No, sir.

The Court:    All right. I find your guilty plea is voluntary. At this time do
              you have any questions or seconds thoughts about pleading
              guilty?

Brown:        No, sir.

(*Id.* at 24–25). In conclusion, the District Court stated, "I find that Mr. Brown is fully competent and capable of entering an informed plea, there's a sufficient factual basis [for the guilty plea], he understands the nature of the charge and the consequence of a guilty plea, he understands the constitutional and other rights that he's giving up by pleading guilty, and his plea is voluntary." (*Id.* at 25). The Court accepted Brown's plea and adjudged him guilty of the possession with intent to distribute charge. The Court deferred acceptance of the plea agreement pending completion of a Presentence Investigation Report (PSR). Sentencing was scheduled for September 21, 2009.

A PSR was prepared prior to sentencing, which reviewed the charge and Brown's conviction, the plea agreement and stipulation, the offense conduct, and the facts surrounding Brown's arrest. (ECF No. 81). Brown's base offense level was calculated to be 26. (*Id.* at 6). A two-level firearm enhancement was added because a .22 caliber handgun with an obliterated serial number was found in Brown's vehicle following his arrest. (*Id.*). Brown's offense level was therefore calculated to be 28. (*Id.*). The Probation Officer recommended an additional two-level enhancement for obstruction of justice because Brown attempted to bribe another individual into claiming ownership of the

handgun. (*Id.* at 6–7). Brown's adjusted offense level was calculated to be 30. (*Id.* at 7). Finally, the Probation Officer reviewed Brown's criminal history and found that Brown met the career offender criteria set forth in U.S.S.G. § 4B1.1, resulting in an adjusted offense level of 34. (ECF No. 81 at 7). Brown's history of criminal convictions netted a criminal history score of seven, resulting in a criminal history category of IV. (*Id.* at 8). Brown's criminal history category was enhanced to VI because of his classification as a career offender. (*Id.*). Based on a total offense level of 34 and a criminal history category of VI, Brown's guideline range of imprisonment was 262–327 months. (*Id.* at 11). Brown raised three objections to the final PSR, challenging the obstruction of justice enhancement, the recommendation that Brown be denied credit for acceptance of responsibility, and the two-level firearm enhancement. (*Id.* at 14–15).

Sentencing was held on November 30, 2009. (ECF No. 95). Brown appeared in person and with counsel pursuant to his guilty plea. The Court began by confirming that Brown had read the PSR and reviewed it with his attorney. (*Id.* at 3–4). After establishing that Brown understood the contents of the PSR, the Court addressed Brown's objections to the report. (*Id.* at 4–12). Brown did not contest the PSR's finding that he was a career offender. (*Id.* at 5–6). The Court then turned to Brown's objections to the obstruction of justice enhancement and the denial of credit for acceptance of responsibility. (*Id.* at 6–8). The Government explained that they did not have any witnesses to present in support of the obstruction charge. (*Id.* at 7). The Court and the Government agreed that the career offender finding effectively made the enhancement for obstruction of justice moot. (ECF No. 95 at 7). However, the Court recognized that the obstruction enhancement was the basis for the denial of acceptance of responsibility. (*Id.* at 7–8). Finding that the obstruction enhancement was moot, the Court sustained

Brown's objection to the denial of credit for acceptance of responsibility. (*Id.* at 8). Counsel for Brown then raised an objection to the two-level firearm enhancement, continuing to deny Brown's ownership of the firearm found in his car at the time of arrest. (*Id.* at 11–12). Because the Government had no witnesses to present in support of the firearm enhancement, the Court sustained Brown's objection. (*Id.* at 12). On the Government's motion, the Court granted Brown an additional credit for acceptance of responsibility, resulting in a total offense of 31 and a criminal history category of VI. (*Id.* at 14–15). Consequently, Brown's guideline range was 188–235 months of imprisonment. (ECF No. 95 at 15).

Counsel for Brown subsequently argued for a downward variance. (*Id.* at 15–16). The Court reviewed Brown's criminal history and expressed significant concern about the sentencing effects of the career offender provisions "because they so greatly increase the offense level and the criminal history category." (*Id.* at 21–22). Consequently, the Court granted Brown a "limited variance . . . because the drug offense which results in the higher career offender guideline provision is disproportionate in this case, and so I'm going to give him effectively a two-level reduction." (*Id.* at 23). Based on this downward variance, the Court found Brown's offense level to be 29, resulting in a guideline range of 151 to 188 months. (*Id.*). The Court sentenced Brown to a term of imprisonment of 169 months. (*Id.* at 23–24).

## II.   **Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.**

Brown identifies the following grounds in support of his Motion to Vacate:

1.   Counsel rendered ineffective assistance because he failed to file a motion to suppress challenging the search and seizure of Brown on November 5, 2008.

     2.      Counsel rendered ineffective assistance because he failed to object to the conversion of the $2,035 on Brown's person at the time of his arrest into its equivalent drug weight.

     3.      Counsel rendered ineffective assistance because he failed to move for a downward horizontal departure pursuant to U.S.S.G. § 4A1.3.

## III.   § 2255 Standards

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion.

Nonetheless, a § 2255 motion is not an alternative to filing a direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nonconstitutional claims that *could have* been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477, n.10, 96 S.Ct. 3037, 49 L.Ed2d 1067 (1976) (citing *Davis v. United States*, 417 U.S. 333, 345-346 and n. 15, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Sunal v. Large*, 332 U.S. 174, 178–79, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)); *see also United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) ("A petitioner who waives the right to appeal is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal.") (quoting Brian R. Means, *Fed.*

*Habeas Practitioner Guide,* Jurisdiction ¶ 1.23.0 (2006/2007)) (emphasis in the original) (internal citations omitted). Nonconstitutional claims that *could not have* been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. at 477 n.10 (quoting *Davis*, 417 U.S. at 346; *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); *United States v. Mikalajunas,* 186 F.3d 490, 492–93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 621.

In addition to the above-stated limitations inherent in a collateral attack, a guilty plea, such as the one in this case, further diminishes the scope of potential claims under § 2255. Inasmuch as a voluntary and intelligent guilty plea amounts to an admission of the material elements of the charged crime, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), it constitutes a waiver of *all claims* relating to non-jurisdictional errors that occurred **prior to** the plea, including claims relating to alleged constitutional deprivations. *United States v. Moussaoui,* 591 F.3d 263, 279 (4th Cir. 2010); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *See also United States v. McCleary,* 112 F.3d 511, 1997 WL 215525 (4th Cir. 1997) (unpublished). In *McCleary,* the Fourth Circuit clarified the effect of the waiver as follows:

> In *Tollett,* the Supreme Court explained that 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process.' As a result, '[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.'

*Id.* at *2 (citing *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)) (internal citations omitted). "Thus where a defendant does not challenge the jurisdiction of the court's 'power to enter the conviction or impose the sentence,' 'the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.'" *United States. v. Fabian*, 798 F.Supp.2d 647, 669 (D. Md. 2011) (quoting *United States v. Broce,* 488 U.S. at 569 (1989)); *See also Tollett*, 411 U.S. at 266 (In the context of a guilty plea, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity."). In the present case, Brown does not contest the jurisdiction

of the District Court to enter the conviction or impose the sentence; accordingly, his claims of ineffective assistance of counsel prior to the guilty plea are limited to claims that his counsel's ineptitude substantially affected his decision to plead guilty. *Fabian*, 798 F.Supp.2d at 670; *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). (Movant must show that counsel's representation fell below an objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

## IV.   <u>Analysis</u>

### A.   **Ineffective Assistance Prior to Guilty Plea Motion**

Brown first argues that trial counsel was ineffective for failing to file a motion to suppress evidence collected by law enforcement during the search of Brown's rental car. (ECF No. 101 at 5). In Brown's view, the search violated the Fourth Amendment and the fruits of that search should have been suppressed. According to Brown, a motion to suppress would have been successful and prevented the Government from using the gun found in his car as a "bargaining tool" in plea negotiations. Brown does not allege that he would have insisted on going to trial but for his counsel's purported error. A review of the record confirms that this argument is foreclosed from review because (1) Brown does not claim that this alleged ineffective assistance of counsel affected his decision to plead guilty; (2) Brown's guilty plea was voluntary and intelligent; and (3) the District Court fully complied with Federal Rule of Criminal Procedure 11 in accepting Brown's plea.

The record reflects that the District Court conducted a thorough Rule 11 colloquy, establishing that Brown was competent and understood the consequences of his plea

prior to allowing Brown to enter a guilty plea. The Court offered Brown and his counsel multiple opportunities to seek clarification or withdraw from the hearing, yet when asked if he had any questions or second thoughts about pleading guilty, Brown denied having doubts and affirmed his desire to go forward with his guilty plea. Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. The purpose of the Rule 11 colloquy is to ensure that the plea of guilty is entered into knowingly and voluntarily. *See United States v. Vonn,* 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed2d 747 (1970). When accepting a guilty plea, the Court must address the defendant personally in open court and inform him of the rights that he is waiving by changing his plea to guilty. Fed.R.Crim.P. 11(b). The court also must determine whether there is a factual basis for the plea and ensure that the plea did not result from force, threats, or non-plea agreement promises. *Id.; see also United States v. DeFusco,* 949 F.2d 114, 119–20 (4th Cir. 1991). If the defendant fails to understand his constitutional protections and the charges made against him, the guilty plea is invalid and should not be accepted. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). "The purpose of Rule 11 is not only to detect and reject involuntary and unknowing guilty pleas but also to produce a suitable record of the plea and plea agreement." *United States v. Friedland*, 879 F.Supp. 420, 427 (D. N. J. 1995). Because the Rule 11 hearing provides the best evidence of a criminal defendant's understanding and acceptance of the plea and its consequences, when assessing the voluntary and intelligent nature of a guilty plea on a § 2255 motion, the reviewing Court necessarily allocates substantial weight to the Rule 11 colloquy.

Statements made during a hearing to accept a guilty plea are presumed to be true and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216 (4th Cir. 2005). The Fourth Circuit Court of Appeals explained that:

> a defendant's solemn declarations in open court ... 'carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Lemaster,* 403 F.3d at 221–22.

The District Court began the plea hearing by investigating Brown's competency to enter a guilty plea. (ECF No. 94 at 4–5). Brown affirmed that he could read and write, was not under the influence of any medications or alcohol, and fully understood the nature of the proceedings. Brown's counsel agreed that he had no reason to question his client's competency. The Court next questioned Brown regarding his legal representation. (*Id.* at 5). Brown acknowledged that he had been given ample opportunity to discuss the case with his lawyer and was completely satisfied with his counsel's representation. (*Id.*). Subsequently, counsel for Brown explained the contents of the plea agreement on the record. (*Id.* at 5–8). Brown averred that he understood the terms of the plea agreement and had reviewed each paragraph of the document with his counsel prior to signing it. (*Id.* at 9).

The District Court read verbatim the contents of the possession with intent to distribute charge outlined in Count One of the indictment, explaining the legal terms to Brown, and assessed the factual basis for Brown's guilty plea. (*Id.* at 10–13). Brown

testified that he was guilty of that charge, admitting that he had possessed Oxycodone pills with the intent to distribute them in Huntington, West Virginia on November 5, 2008. (ECF No. 94 at 11–12). The United States then presented the testimony of Sergeant Darrell Booth, Huntington Police Department, corroborating Brown's account of his possession of Oxycodone and distribution of Oxycodone in Huntington. (*Id.* at 13–15).

The Court proceeded to explain the consequences of Brown's guilty plea. (*Id.* at 16–24). The Court discussed Brown's potential loss of civil rights, sentencing exposure, terms of supervised release, potential monetary penalties, and loss of federal benefits. (*Id.* at 16–19). Next, the Court explained at length the sentencing guidelines, their applicability to Brown's case, the unavailability of parole, and the binding nature of the guilty plea. (*Id.* at 19–20). Continuing with the plea colloquy, the Court reviewed the terms of Brown's plea agreement concerning Brown's waiver of appellate and collateral attack rights. (ECF No. 94 at 20–22). The Court then discussed at length the constitutional protections Brown would give up if he chose to plead guilty. (*Id.* at 22–24). Finally, the Court questioned Brown regarding the voluntary nature of his guilty plea. (*Id.* at 24–25). Brown testified that his guilty plea was voluntary and that he did not have any second thoughts about pleading guilty. (*Id.*). Thus, the record demonstrates that the Court complied with the requirements of Rule 11 and that Brown's guilty plea was voluntary and intelligent. In addition to Brown's statements at the plea hearing, Brown initialed and signed a written plea of guilty and the plea agreement, attesting that his guilty plea was both knowing and voluntary. (ECF Nos. 56, 57).

Moreover, Brown makes no contention that suppression of the evidence would have affected his decision to enter a guilty plea. Ultimately, Brown pled guilty only to the first count of the indictment, which charged him with possession with intent to distribute oxycodone. The remaining three counts, which were premised on law enforcement's recovery of the firearm in Brown's vehicle, were dismissed as part of the plea agreement. The evidence against Brown on the possession charge was overwhelming and did not in any manner rely upon the fruits of the vehicle search. Consequently, Brown cannot reasonably connect his decision to plead guilty to the drug offense with counsel's alleged ineffectiveness in failing to seek suppression of the firearm. If a movant fails to establish prejudice from the alleged failure of counsel, the reviewing court need not determine whether counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 6971, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In conclusion, the District Court conducted a careful Rule 11 colloquy that established Brown's full understanding of the charges against him, the burden of proof on the United States, and the consequences of his guilty plea, as well as the knowing and voluntary nature of Brown's guilty plea. Given the Rule 11 colloquy, Brown's statements at the plea hearing, and the written documents signed by Brown, the undersigned **FINDS** that Brown's guilty plea was voluntary and intelligent. "It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Att'y Gen. of Maryland,* 956 F.2d 1290, 1294 (4th Cir. 1992); *see also Tollett,* 411 U.S. at 266. Brown's claim of ineffective assistance based on counsel's failure to file a motion to suppress is clearly premised on an alleged constitutional violation that occurred prior to his guilty plea and was unrelated to it. Consequently, Brown's claim is foreclosed from review.

- 18 -

**B.     Ineffective Assistance Related to Sentencing**

Brown also argues that counsel rendered ineffective assistance related to his sentencing. In *Strickland v. Washington*, the Supreme Court adopted a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Precedents "establish that there exists a right to counsel during sentencing in both noncapital and capital cases. Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler v. Cooper*, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012) (quoting *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001)) (internal citations omitted); s*ee also United States v. Breckenridge,* 93 F.3d 132, 135 (4th Cir. 1996). In order to establish deficient representaton, a movant must show that his counsel's performance at sentencing fell below an objective standard of reasonableness. In order to establish prejudice in the context of sentencing, a movant must at a minimum allege facts which demonstrate a "reasonable probability" that his sentence would have been more lenient absent counsel's errors. *See Buckner v. Polk*, 453 F.3d 195, 201–08 (4th Cir. 2006); *Royal v. Taylor,* 188 F.3d 239, 248–49 (4th Cir. 1999).

1.     *Failure to Object to Conversion of Currency into Equivalent Drug Weight*

First, Brown contends that counsel rendered ineffective assistance when he failed to object to the conversion of the currency found on Brown's person at the time of his

arrest into the equivalent number of oxycodone pills. (ECF No. 101 at 7). Brown argues that he never stipulated that the $2,035.00 was the product of drug trafficking. Further, the Government presented no evidence that the currency was the product of drug trafficking. Therefore, Brown claims that he should not have been held responsible for the drug equivalent of the $2,035.00.

On June 24, 2009, Brown signed and executed a plea agreement, admitting his guilt to the count of possession with intent to distribute oxycodone. (ECF No. 57). As part of the plea agreement, Brown signed a stipulation of facts in which he admitted that, at the time of arrest, he possessed $2,035.00 in cash. (*Id.* at 8). Brown's plea hearing was subsequently held on June 29, 2009. (ECF No. 94). At the plea hearing, Brown testified that at the time of his arrest he had more than $2,000.00 in cash on his person. (*Id.* at 12).

Following the plea hearing, the United States Probation Office prepared a Presentence Report (PSR), summarizing Brown's conduct and calculating Brown's guideline range. (ECF No. 81). In the report, the Probation Officer summarized the plea agreement and stipulation of facts, noting that Brown had stipulated that he possessed $2,035.00 in cash at the time of his arrest. (*Id.* at 4). The Probation Officer reviewed Brown's offense conduct. (*Id.* at 4–5). Pursuant to the plea agreement, Brown admitted to having 80 (80 mg) OxyContin pills on his person at the time of arrest and to having previously sold 125 (80 mg) OxyContin pills to the confidential informant. (*Id.* at 5). The Probation Officer further observed that "[u]pon being searched, [Brown] was found to possess $2,035, which represents proceeds from prior drug transactions."[2] (*Id.*). Based

---

[2] The Probation Officer did not identify the factual basis for this conclusion.

on this finding, the Probation Officer converted the $2,035.00 in currency into the equivalent number of (80 mg) OxyContin pills, 25. (*Id.*). Consequently, Brown was held responsible for 230 (80 mg) OxyContin pills, resulting in a base offense level of 26.[3] (*Id.*). Based on the total number of pills, specific offense characteristic, and adjustment for obstruction of justice, the Probation Officer calculated Brown's adjusted offense level to be 30. (ECF No. 81 at 6–7). Brown's criminal history score placed him in criminal history category IV. (*Id.* at 8). However, because the Probation Officer found that Brown satisfied the career offender provision of the Sentencing Guidelines, she calculated his total offense level to be 34 with a criminal history category of VI. (*Id.* at 7–8).

At sentencing on November 30, 2009, the Court reviewed the PSR and its guideline calculation. (ECF No. 95). The Court explicitly noted that the "career offender provisions dictate both an offense level and a criminal history category that are higher than the defendant would otherwise face." (*Id.* at 5, 8). Next, the Court addressed Brown:

> The Court:  [D]o you understand that because you're subject to these career offender provisions, you still end up with an offense level that starts at 34 rather than some lower level based on the drugs and whether or not you had a gun or whether or

---

[3] To calculate Brown's base offense level, the Probation Officer converted the 230 (80 mg) OxyContin pills into their marijuana equivalent. (ECF No. 81 at 5). According to the manufacturer, an 80 mg Oxycontin pill contained .08 grams of actual oxycodone. (*Id.*). Therefore, 230 (80 mg) OxyContin pills contained 18.4 grams of actual oxycodone. (*Id.*). One gram of oxycodone (actual) was equivalent to 6,700 grams of marijuana. (*Id.*). Brown's 18.4 grams of oxycodone were equivalent to 123.28 kilograms of marijuana. (*Id.*). U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c) provide that offenses involving at least 100 but no more than 400 kilograms of marijuana have a base offense level of 26. (*Id.* at 6).

In the present case, assuming *arguendo* that Brown did not satisfy the career offender requirements, his base offense level would have been the same even if the $2,035.00 had not been converted into its equivalent drug weight. Less the 25 (80 mg) OxyContin pills, Brown would have been responsible for 205 (80 mg) OxyContin pills pursuant to the plea agreement. 205 (80 mg) OxyContin pills contain 16.4 grams of actual oxycodone. 16.4 grams of oxycodone are equivalent to 109.88 kilograms of marijuana. Because this marijuana weight falls between 100 to 400 kilograms, Brown still would have had a base offense level of 26. *See* U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c).

|              | not you caused obstruction of justice? Do you understand that? |
|--------------|----------------------------------------------------------------|
| Brown:       | You say starting at level 34?                                  |
| The Court:   | The career offender provision requires this Court to start at a level 34. |
| Brown:       | Yes, sir.                                                      |

(*Id.* at 12). In calculating Brown's offense level, the Court found that Brown was responsible for 18.4 grams[4] of oxycodone, resulting in a base offense level of 26. (*Id.* at 14). However, the Court then applied the career offender provision pursuant to U.S.S.G. § 4B1.1, raising Brown's offense level to 34 and his criminal history category to VI. (*Id.*). Brown was subsequently granted a three-level credit for acceptance of responsibility (*Id.*) and a two-level downward vertical departure (ECF No. 95 at 23), resulting in an offense level of 29 and a guideline range of 151 to 188 months. (*Id.*). The Court sentenced Brown to 169 months incarceration. (*Id.* at 23–24).

Having reviewed the record, it is clear that Brown misunderstands the significance of the career offender enhancement in his case. Based on Brown's violation of 21 U.S.C 841(a)(1) and his responsibility for 230 (80 mg) OxyContin pills (18.4 grams of oxycodone), the Court found that Brown's base offense level was 26. (ECF No. 95 at 14). However, pursuant to the Government's information and the PSR, the Court found that Brown satisfied the career offender requirements of U.S.S.G § 4B1.1, resulting in an offense level of 34 and a criminal history category of VI. (*Id.*). As the Court explained to Brown at multiple points during the sentencing hearing, the career offender designation resulted in a higher offense level and criminal history category regardless of the

_____

[4] As previously stated, 230 (80 mg) OxyContin pills are equivalent to 18.4 grams of actual oxycodone.

underlying drug weight attributed to Brown or any other proposed enhancement. (*Id.* at 5, 8, 12). Even if counsel had objected to the conversion of the $2,035.00 into its equivalent drug weight and the Court had sustained that objection, Brown would still have been sentenced based on the career offender enhancement. *See* U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply."). Because the conversion of the $2,035.00 into its equivalent drug weight had no impact on Brown's sentence, Brown cannot demonstrate a "reasonable probability" that his sentence would have been more lenient absent counsel's alleged error. Consequently, the undersigned **FINDS** that Brown has failed to demonstrate ineffective assistance of counsel related to the currency conversion.

2. *Failure to Move for a Reduction of Criminal History Category*

Next, Brown argues that counsel rendered ineffective assistance because he failed to move for a downward horizontal departure pursuant to § 4A1.3 of the sentencing guidelines. (ECF No. 101 at 10). Brown suggests that the criminal history category of VI mandated by the career offender guidelines over-represented the seriousness of his criminal history and that counsel should have directed the Court's attention to § 4A1.3. While conceding that his counsel did, in fact, request a downward departure generally, Brown asserts that counsel erred because he failed to specifically ask for a 1 point reduction of Brown's criminal history category. [5]

---

[5] Although Brown frames his argument in terms of ineffective assistance of counsel, it appears to the undersigned that Brown actually takes issue with the Court's application of the downward variance rather than counsel's performance at sentencing. Implicit in Brown's argument is the belief that the Court should have granted him a downward variance in his offense level *and* criminal history category. Brown's waiver of collateral attack was designed to prevent exactly this type of challenge to Brown's sentence in habeas proceedings. United States v. Djelevic, 161 F.3d 104, 107 (2nd Cir. 1998).

At sentencing, the Court addressed Brown's objections to the PSR and calculated Brown's guideline range. (ECF No. 95 at 4–15). The Court determined that Brown was a career offender under § 4B1.1(a), a fact that was established by Brown's criminal history. Moving to § 4B1.1(b), the Court noted that the sentence enhancement under 21 U.S.C. § 851 resulted in an offense level of 34. (*Id.* at 5-6, 12). After considering arguments made by Brown's counsel, the Court rejected the Government's request for a two-level increase for obstruction, which then allowed the Court to grant Brown a three-level reduction for acceptance of responsibility. (*Id.* at 8-9). Thus, Brown's net offense level was 31, with a career offender criminal history category of VI, resulting in a guideline range of 188 to 235 months of imprisonment. (*Id.* at 15). Brown's counsel then moved the Court for a downward variance, arguing that much of Brown's criminal history occurred when he was only 19 years old; that he had taken accountability for his past acts; and that he had made admirable efforts at rehabilitation since his arrest on the federal indictment. (*Id.* at 16). The Court also allowed Brown to make a statement. (*Id.* at 18-21). Brown requested a downward departure on the basis of his rehabilitation efforts and his desire to help raise his twenty-month old son. He acknowledged that he had made bad decisions in his life, but expressed his intent to turn his life around and make positive contributions to society. After listening to the arguments of counsel and Brown's statement, the Court acknowledged that Brown seemed sincere in his desire to change his way of life. However, the Court noted that he was disturbed by Brown's criminal history and felt that Brown had earned a significant prison sentence with his conduct, adding "[s]omeone with felony convictions like this who can't make it more than a few months after parole when he's been given breaks while on parole just doesn't deserve another break." (*Id.* at 22). The Court reviewed Brown's prior crimes, emphasizing that

Brown had been convicted of two felonies involving violence, had difficulties abiding by the terms of his parole, and was subsequently arrested selling a "very dangerous drug at a substantial level" in Huntington only four months after his parole had expired. (*Id.* at 21-22).

Brown correctly states in his motion that the Court expressed concern over the career offender provisions because they "so greatly increase the offense level and the criminal history category." (*Id.* at 22). However, contrary to Brown's suggestion, the Court did not imply that Brown's criminal history category over-represented the seriousness of his past crimes. Instead, the Court was troubled that the ten-year maximum sentence enhancement resulting from the § 851 Information increased Brown's offense level by two, which, in turn, significantly increased his guideline range. For this reason, the District Judge decided to vary from the career offender guidelines, explaining his reasoning as follows:

> I am always troubled by these career offender provisions because they so greatly increase the offense level and the criminal history category. And even though I frankly don't have a lot of sympathy for your situation here for the reasons I've already stated, I do have one concern about the way the career offender provision works. *In this case because of this marijuana conviction in 2007, possession with intent to deliver, you were given a 50-day jail sentence and [the state of Michigan] didn't revoke your parole, so I don't think that they treated it as a very serious crime. And yet because of it, you're subject to these increased penalties under 851. And also as a result, you get extra points under the – for the offense level under the career offender provision. It amounts to a two-level increase because your maximum sentence is increased as a result of all this. And so I, frankly, think that that's an unfair operation of law, and I am going to grant a limited variance to try to remedy that.* (emphasis added).

> If the defendant was not subject to the maximum penalty of more than 25 years, his offense level would be 32 rather than 34, and then he'd get reduction for acceptance of responsibility. So I'm going to give him the benefit of that reduction because I would find in his case that the drug offense which results in the higher career offender guideline provision is

disproportionate in this case, and so I'm going to give him effectively a two-level reduction.

(*Id.* at 22–23). Based on this reduction, the Court found that Brown's offense level was 29, leading to a guideline range of 158 to 188 months. (ECF No. 95 at 23). Brown was then sentenced to 169 months imprisonment. (*Id.* at 23–24).

In order to establish a valid ineffective assistance claim, Brown must allege facts demonstrating both inadequate representation and a "reasonable probability" that his sentence would have been less than 169 months but for counsel's failure to specifically request a over-representation departure from the applicable criminal history category. Brown simply has not met this burden.

"[J]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 778, 178 L.Ed.2d 624 (2011). Counsel's performance must be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," because "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471

(2003)

Similarly, to establish prejudice from the alleged deficient performance, Brown "must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro,* 642 F.3d at 450 (citing *Harrington,* 131 S.Ct. at 778). It is insufficient for Brown "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a "reasonable probability" that his sentence of imprisonment would have been more lenient requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In this case, Brown's counsel provided more than adequate representation at sentencing. Based upon his efforts, the Court rejected the Government's arguments of obstruction. Although an obstruction enhancement was moot given Brown's higher career offender offense level, eliminating the obstruction claim paved the way for Brown to receive a three-level reduction for acceptance of responsibility. Moreover, counsel argued passionately in support of a downward variance from the sentencing guidelines, pointing out that most of Brown's past crimes occurred when he was 19 years old. (*Id.* at 15–18). Although counsel did not explicitly ask for an over-representation departure, he essentially asked for any and every leniency the Court was willing to grant. The Court found merit in counsel's argument and granted a downward variance, indicating that Brown's offense level under the career offender guidelines was "disproportionate" given that the two-level increase resulted from a drug conviction that had netted Brown a mere 50-day jail sentence and no revocation of parole. (*Id.* at 22–23). Despite counsel's "failure" to specifically argue for a horizontal departure, counsel obtained a favorable variance for Brown. In light of counsel's successful objections to the PSR and his actions

in obtaining a downward vertical departure for Brown, the undersigned **FINDS** no merit in Brown's allegation that counsel's performance was deficient.

Nonetheless, even assuming that counsel's performance was deficient, Brown's motion fares no better because he cannot demonstrate prejudice. At sentencing, the Court applied the career offender guidelines and the § 851 enhancement, which gave Brown an offense level of 34 and a criminal history category of VI. However, the Court recognized the injustice inherent in the two-level increase in Brown's offense level and reduced it from 34 to 32. The Court further granted Brown a three-level credit for acceptance of responsibility. Consequently, the Court found that Brown's offense level was 29 and his criminal history category was VI. Based on the guideline range of 158 to 188 months, Brown was sentenced to 169 months.

Brown has alleged no facts to suggest that his sentence would have been less than 169 months if counsel had specifically argued for a horizontal departure in Brown's criminal history category. U.S.S.G. § 4A1.3(b)(3)(A) limits the extent of a downward departure for a career offender to one criminal history category. At best, the Court could have reduced Brown's criminal history category from VI to V.  Had the Court reduced the criminal history category rather than the offense level, Brown would have had an offense level of 31 and a criminal history category of V. A review of the 2009 Sentencing Table reveals that an offense level of 31 and a criminal history category of V results in a sentencing guideline range of 168 to 210 months of imprisonment, a higher range than that applied by the Court. In fact, Brown's sentence of 169 months falls within the lower limit of this guideline range. Consequently, the undersigned **FINDS** that Brown presents no facts demonstrating a reasonable probability that his sentence would have

been more lenient but for counsel's failure to argue for a horizontal departure.[6]
Therefore, Brown has failed to establish ineffective assistance of counsel.

## V.     __Proposal and Recommendations__

For the reasons set forth above, the undersigned respectfully **PROPOSES** that
the District Court accept and adopt the findings proposed herein and **RECOMMENDS**
the following:

**1.**     Movant's Application Under 28 U.S.C. § 2255 for Writ of Habeas Corpus
by a Person in State or Federal Custody (ECF No. 101) be **DENIED**; and

**2.**     This civil action be **DISMISSED, with prejudice,** and removed from
the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby
**FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United
States District Judge. Pursuant to the provisions of Title 28, United States Code, Section
636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall
have fourteen days (filing of objections) and three days (mailing) from the date of filing
this "Proposed Findings and Recommendations" within which to file with the Clerk of
this Court, specific written objections, identifying the portions of the "Proposed
Findings and Recommendations" to which objection is made and the basis of such
objection. Extension of this time period may be granted by the presiding District Judge
for good cause shown.

---

[6] Even under the unlikely scenario that the Court would have granted Brown two departures from the
career offender guidelines by removing two levels from the offense level and one criminal history
category, the resulting offense level of 29 and a criminal history category of V netted a sentencing
guideline range of 140-175 months of imprisonment.  Brown's 169 month sentence still falls within that
range.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: August 17, 2012.

Cheryl A. Eifert
United States Magistrate Judge